## EDELSTEIN v. GILLMORE et al.[*]

District Court, S. D. New York. January 25, 1929.

Nathan Burkan, of New York City, for plaintiff.

Paul N. Turner, of New York City, for Actors' Equity Ass'n.

FRANK J. COLEMAN, District Judge. Plaintiff is engaged in business as the "personal representative" of actors and actresses, which is a well-recognized line of business connected with the theatrical profession. His duties as such include furnishing to his clients advice and assistance in a variety of matters, such as obtaining employment, procuring proper publicity, smoothing out troubles with managers and producers, and he also supplies them with headquarters. The compensation of such personal representative is ordinarily a percentage of the earnings of the artist, and heretofore the contracts have been for definite periods of varying lengths, sometimes being as much as for ten years.

The Actors' Equity Association is a labor union having almost absolute control of the supply of actors and actresses in New York

*Decree reversed 35 F.(2d) 723.

City and its environs so far as the legitimate and musical comedy fields are concerned. Practically no one appearing in either of those two fields in this territory is outside the association, and it is one of the regulations which the association enforces that no one of its members will appear in any production in which a nonmember appears.

On September 21, 1928, the Actors' Equity Association adopted the following resolution:

"Resolved, That on or after the ninth day of October, 1928, any member securing an engagement in the legitimate and musical comedy fields through any employment agent in New York City or environs and who pays any commission to any employment agent who does not hold a permit from Equity to do his business as such with our members, or who pays directly or indirectly (i. e. either in money or in kind) more than the commission set by the Association is guilty of an act prejudicial to the welfare of the Association and will in the discretion of the Council be either censured, suspended, expelled from membership, or otherwise punished.

"This resolution is not to be construed as affecting agreements made prior to the date named in the above resolution with agents or personal representatives who do not take out our permits."

There is a conflict in the evidence as to whether or not the resolution as adopted contained the last paragraph above quoted. Without deciding that question, I will assume for the purposes of this motion that it did. On this application for a preliminary injunction I think the defendants are entitled to have the court find that the threatened enforcement is of the entire resolution and not merely of the first paragraph.

Pursuant to the resolution, certain forms of contracts were prepared which personal representatives are required to make with the association before obtaining a license.

The individual defendants are officers and representatives of the Actors' Equity Association, and after the adoption of the resolution and the preparation of the license contracts, they notified not only their own members, but also all producers and managers and personal representatives, that the resolution and the regulations under it would be enforced and that dire results would flow from their violation. Thereupon plaintiff brought the present action and joined as defendants the Actors' Equity Association and the officers and representatives who are named herein, alleging diversity of citizenship as the basis of jurisdiction. This court thereafter granted a motion to dismiss the bill as against the Actors' Equity Association on the ground that it was an unincorporated association, some of the members of which may not have had a citizenship diverse from plaintiff's.

The contract which the personal representatives are required to make with the association before obtaining a license provides the terms upon which the personal representative may contract with an artist, which terms are much more favorable to the artist than those heretofore prevailing. Furthermore, this form of contract contains the following provision:

"At the request of either the licensee or the member and with the consent of Equity, any existing agreement of members with personal representatives may be modified and under such circumstances are hereby agreed to be modified to conform to the agreements herein contained.

"Said modification to be effective as of the date of the issuance of this permit."

The effect of this latter provision is to require any personal representative who accepts a license from the association to modify his previously existing contracts to conform to the new terms provided the artists so require.

The result of the resolution and of the regulations under it is that no personal representative can do any new business in the legitimate or musical comedy fields in New York without obtaining a license from the association; that is, he cannot make a new agreement with an artist, though he may continue making agreements with producers to engage artists who had contracts with the personal representative antedating the resolution. While he may continue carrying out these previously made contracts with his clients, he does so at the expense of all new business in the legitimate and musical comedy fields in New York City, because in the absence of a license neither artists nor producers would dare deal with him as to new business. It is apparent to me that the purpose which the Actors' Equity Association has in mind is not merely to regulate the future agreements between its members and personal representatives, but also by coercion to compel personal representatives to agree to abandon previously made contracts, and the means of coercion is the threat of exclusion from new business. The organization of the theatrical industry in New York is such that the Actors' Equity Association can carry out its purpose in this matter and absolutely deprive personal representatives of any new business in the legitimate and musical comedy fields

unless they surrender their rights under old contracts.

Defendants seek to justify the action of the association on the ground that its members had the right to agree among themselves not to patronize a personal representative who did not comply with their requirement, provided their purpose was merely to benefit themselves and not to injure him, even though injury to him might indirectly result. National Fireproofing Co. v. Mason Builders' Ass'n (C. C. A.) 169 F. 259, 26 L. R. A. (N. S.) 148; Tanenbaum v. N. Y. Fire Ins. Exchange, 33 Misc. Rep. 134, 68 N. Y. S. 342; Heim v. N. Y. Stock Exchange, 64 Misc. Rep. 529, 118 N. Y. S. 591. Even assuming the soundness of this principle, it would have application only to the regulation of business in the future. In so far as the purpose is to deprive plaintiff of new business because he refuses to surrender old contracts, the primary object is to injure him. Consider the case of a personal representative who may be entirely qualified to act as such and willing to abide by the association's regulations as to new business, but who refuses to give up his legal rights in old contracts. Can it be said that a combination to deprive him of new business because of his refusal is not punitive and not directed primarily to the purpose of injuring him? His refusal would not make him less serviceable to new clients and to the profession generally, nor would it make the terms upon which his services might be procured in the future less advantageous than they otherwise would have been. In such a case the purpose of the combination would be to extort from him an abandonment of rights which the law secures to him. This I find was actually one of the purposes of the Actors' Equity Association in adopting the resolution and the measures under it, and for that reason, if for no other, the preliminary injunction should issue. Defendants' contention that, however unlawful the conduct of the association, they individually should not be restrained because they are acting only in a representative capacity, is entirely meritless.

Settle order on notice.